# EXHIBIT 2

**Subject:**    CLEAN RECAP Bluestone 70,000 10% coal Norfolk to Poland lay can 5/15 December 200 - cp dtd 4 November 2020

**From:**    "Paolo Bolla" <pbolla@midship.com>

**Sent:**    04/11/2020 14:19:40

**To:**    "Alexander Nikolsky" <nikolsky@dhshipman.com>;

**Attachments:** Norden TBN - Bluestone CP DTD 052220 (Working Copy).pdf



Hello Alex

we are pleased to inform you that charterers have timely lifted their subs.  As main terms and all charter party details are agreed and in order, we are pleased to recap below how the parties are fixed clean, with charter party dated today 4 November 2020 , in accordance with the authority we have as brokers for the charterers and from you as owners

-FIXTURE TO REMAIN STRICTLY PRIVATE AND CONFIDENTIAL-

1/ Charterers:

       Bluestone Coal Sales Corporation
       302 S. Jefferson Street
       Roanoke, VA 24011 USA

2/ Owners/Disponent Owner:

Dh-Dhekelia Shipmanagement Limited
Kalliopis, 7, Aglantzias, P.C. 2102, Nicosia, Cyprus

3/ Vessel: Vessels shall be self-trimming, gearless, fully suitable for grab discharge single-deck bulk carrier

Owners guarantee that the nominated vessel(s) will comply with loading / discharging restrictions and regulations at the time of calling.

4/ Cargo 70,000 mt 10 % MOLOO of lawful non dangerous Coal to be loaded/stowed carried in accordance with IMO/IMSBC code

5/ Loading Laycan: 0001 hrs 5 December 2020 – 23:59hrs 15 December 2020

6/ Nomination of Vessel
Owners shall nominate a performer vsl provided that she fully complies with the terms and condition of the relevant charter party for present cp at least 7 days prior to vsl eta load port together with all necessary certificates/documents, eta load port, estimated intake.  (Chrs will ask terminal if can nominate 6 days prior)  All

vessels nominations to be subject to charterer/vetting approval within one working day form receipt of a valid nomination including vetting questionnaire and submission of al relevant documents/certificates

Owners are to nominate the Vessel, giving the main particulars of:

a) Flag
b) Year Built
c) Deadweight
d) Draft
e) Number of holds and hatches
f) Grain capacity and cubic in total and by holds
g) Type of hatch covers
h) Vessel's class
i) P and I Club
j) SMC / DOC / ISSC / H+M / Class / P+I and ITF or equivalent/ MLC certificates
k) Present position, itinerary, eta at load port and expected cargo intake
l) Charterers questionnaire
m) Advise companies named in the chain of nominated vessel, if any, and acceptance of the chain will be at charterers reasonable discretion.

Owners shall use their best efforts to arrive within the laycan and undertake to notify as soon as possible charts of any delay experienced by the vessel, where the vessel's NOR may be tendered beyond the last day of the cancelling, giving reasons for the delay. Upon receipt of Owners' notice, Charterers' shall have the option to terminate the charter party within 48 hours after receipt of Owners' notice, but never later than upon vessels arrival Pilot Station at Loadport. In case charterers decide not to terminate the charter party, vessel will be loaded on a best effort basis and laytime to start counting once loading begin.

Notices for loading: upon vessel's nomination and thereafter  3, 2, 1 days. Latest with 48 hours notice, Master to advise loading plan which to include minimum rotation movements and holds to be loaded. Notices for discharging: upon vessel's sailing from load port and thereafter daily and 12, 6 hours.

7/ Loading Port / Terminal: 1 Safe Berth Norfolk intention Pier VI, **** mt pwwd of 24 consec hrs sshinc chopt to load at **** pwwd of 24 consec hrs sshinc mts excluding superholidays as per BIMCO holiday calendar
Notice of readiness may be tendered any time shinc. Laytime shall commence 12 hours after the vessel tenders notice and is in all respects ready to discharge unless sooner commenced, in which case actual time used to count. Notice of readiness may be tendered whether in port or not, whether in berth or not, whether in free pratique or not, whether custom cleared or not.

If the berth is not available on the Vessel's arrival, the Master may tender said notice from a lay berth or anchorage within the port limits. Once berth is free, time used from shifting from anchorage to berth not to count even if vessel on demurrage.

At loadport in case hold fails inspection time from failure until hold pass not to count as laytime or as demurrage if it is already on demurrage.

Owner agree to carry a set of Bills of lading on board departing load port, if so requested by chrs but same is always to be subject to head ows approval

8/ Discharge Port / Terminal: 1 safe port, 1 safe anchorage, or 1 safe berth, Gdansk, Poland at Port Polnocny Dry Bulk Terminal (Outer Harbour)- or in chopt Swinoujscie.

In Gdansk vsl to discharge at the rate of **** mt PWWD of 24hrs SHINC excluding holidays are per BIMCO calendar if used actual time used to count.
In Swinoujscie vsl to discharge at the rate of **** mt PWWD of 24hrs SHINC excluding holidays are per BIMCO calendar if used actual time used to count.

Notice of readiness may be tendered any time shinc. Laytime shall commence 12 hours after the vessel tenders notice and is in all respects ready to discharge unless sooner commenced, in which case actual time used to count. Notice of readiness may be tendered whether in port or not, whether in berth or not, whether in free pratique or not, whether custom cleared or not.

Should the circumstance arise that chrs require the vessel to discharge at alternative or additional ports within Skaw / Passero, Mediterranean Sea, Black Sea,  the ows to agree same with compensation to be mutually agreed on an open book basis,  but always sun to head owner approval of alternative destination
Charterers to declare final dischport destination latest 2 days before vsl's arrival loadport.

9/ Turntime: 12hrs tt both  at load and discharge port usc

10/ Laytime: Laytime to be non-reversible

11/ FREIGHT: All freight rates are bss 1/1 FIOST

Bss ****  shinc load in Norfolk

Usd ****  Discharge in Gdansk with min 15.00 mtr FW draft
Usd ****  Discharge in Swinoujscie with min13.20 mtr FW draft

++++++++++++++++++++++++++++++++++++++++++++++++++++

Bss ****  shinc in Norfolk

Usd *** Discharge in Gdansk with min 15.00 mtr FW draft
Usd *** Discharge in Swinoujscie with min 13.20 mtr FW draft

12/ Demurrage: USD MAX ***** PDPR HDLTSBENDS /exact demurrage to be declared by ows together with final performing vsl

13/ Freight Payment: 100% of freight less ***% Mid-Ship Brokerage comm is payable to the owner/vessel via MID-Ship on Bill of Lading quantity within 3 banking days after receipt of owners freight invoice and release of signed clean Bills of Lading marked "Freight Payable as per governing Charter Party"
The demurrage / dispatch if any is payable within 30 days of discharge provided copies of SOF/NOR/laytime calculations and Owners final freight invoice are received by Charterers.

14/ Taxes & Dues:

Freight shall be inclusive of all Port Charges, Harbour dues, Taxes and Consulages on the Vessel.

Any taxes / dues / wharfage on cargo to be for Charterers account. Any taxes / dues/ wharfage on vessel and/or freight to be for owners account

15/ Agents: Charterers agents at both ends, ows to be customary fees

16/ Jurisdiction: London Maritime Arbitrators Association (LMAA) English law to apply.

17/ Commissions: ***% total comm on fdd

18/ Voyage Charter Party: attached

19/ In case original bills of lading is not ready upon vessel arrival a disport, owns to allow to discharge and release the cargo against an LOI in head ows pandi club wording.
 otherwise other terms and conditions based on chrs proforma cp Norden tbn cp dtd 22 May 2020 including
"cl 4 - pls replace reference to clause 27 with clause 35

END

Best Regards

Paolo Bolla
As Broker only
_____

MID-SHIP Italy SRL | www.midship.com

pbolla@midship.com
M: +39 334 7946 984 | Skype: paolobolla@hotmail.com

ORIGINAL

| 1. Shipbroker | RECOMMEND<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER(AS REVISED 1922, 1976 AND 1994)<br>(to be used for trades for which no approved form is in FORCE)<br>CODE NAME: "GENCON" |
|---|---|
| **MID-SHIP GROUP LLC**<br>**145 Main Street**<br>**Port Washington, NY 11050** | Part I |
| | 2. Place and date<br>**Italy, November 4, 2020** |
| 3. **Disponent** Owners/Place of Business (Cl. 1)<br>Owners/Disponent Owners: Dh-Dhekelia<br>Ship Management Limited<br>**Kalliopis, 7, Aglantzias, P.C. 2102, Nicosia,**<br>**Cyprus** | 4. Charterers/Place of business (Cl. 1)<br>**Bluestone Coal Sales Corporation**<br>**302 S. Jefferson Street**<br>**Roanoke, VA 24011 USA** |
| 5. Vessel's name (Cl. 1)<br>**M/V DDSL "TBN ", (See Clause 27)** | 6. GRT/NRT (Cl. 1) |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1) | 8. Present position (Cl. 1) |
| 9. Expected ready to load (abt.) (Cl. 1)<br>**See Clause 29** | |
| 10. Loading port or place (Cl. 1)<br>**See Clause 31** | 11. Discharging port or place (Cl. 1)<br>**See Clause 32** |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>**70,000 Metric Tons, 10% more or less in Owners' option of lawful non dangerous Coal to be loaded/stowed**<br>**carried in accordance with IMO/IMSBC Code  (See Clause 28)** | |
| 13. Freight rate (also state weather freight prepaid or payable on delivery) (Cl. 4)<br><br>**See Clause 35** | 14. Freight payment (state currency and method of payment;<br>also beneficiary and bank account) (Cl. 4)<br><br>**See Clause 35** |
| 15. State if Vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load and discharge is agreed, fill in a)<br>and b). If total laytime for load. and<br>discharge, fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6) | a) Laytime for loading<br>**See Clause 31** |
| 18. Agents (loading) (Cl. 6)<br>**Charterers Agents at Load Port** | b) Laytime for discharging<br>**See Clause 32** |
| 19. Agent (discharging) (Cl. 6)<br>**Charterers Agents at Discharge Port** | c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>**USD max 14,000 per day pro rata / HDLTSBENDS /**<br>**exact demurrage to be declared by Owners together**<br>**with final performing vessel.** | 21. Cancelling date (Cl. 9)<br>**See Clause 29** |
| | 22. General Average to be adjusted at (Cl. 12)<br><br>**London** |
| 23. Freight Tax (state if for Owners' account (Cl. 13 (c))<br>**See Clause 36** | 24. Brokerage commission and to whom payable (Cl. 15)<br><br>**1.25% total commission to MID-SHIP on freight,**<br>**deadfreight and demurrage** |
| 25. Law and Arbitration (state 19(a), 19(b), or 19(c) of Cl. 19; if 19 (c) agreed<br>also state Place of Arbitration) (if not filled in 19(a) shall apply)) (Cl. 19)<br>**London Maritime Arbitrators Association (LMAA)**<br>**English Law to apply** | 26. Additional clauses covering special provisions, if agreed<br><br>**Clauses 27 to 44, both inclusive, to be deemed fully**<br>**incorporated and to form part of this Charter Party.** |
| (a) State maximum amount for small claims / shortened arbitration (Cl. 19) | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

This document is a computer generated GENCON 1994 form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is copyright of Strategic Software Ltd. (SSL) Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document, and which is not clearly visible, then the original BIMCO approved shall apply. BIMCO and SSL assume no responsibly for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

**"Gencon" Charter** (As Revised 1922, 1976 and 1994)

**1.** It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that: 1–6

The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo. 7–14

**2.  Owners' Responsibility Clause** 15
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager. 16–22
~~And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.~~ 23–27

**3.  Deviation Clause** 28
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life or property **and bunkering**. 29–31

**4.  Payment of Freight** *(See Clause 35)* 32
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo. 33–34
(b) *Prepaid.* If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost. 35–37
Neither the Owners nor their agents shall be required to sign or endorse Bills of Lading showing freight prepaid unless the freight due to the Owners has actually been paid. 38–39
(c) *On delivery.* If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. 40–41
Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally. 42–46

Cash for Vessel's ordinary disbursements at port of loading to be advanced by Charterers, if required at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses. 47–49

**5.  Loading/Discharging** 50
(a) *Costs/Risks* 51
~~The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.~~ 52–59
(b) *Cargo handling Gear* 60
~~Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power – pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party – shall not count as laytime or time on demurrage.~~ 61–69
~~On request the Owners shall provide free of change cranemen / winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Shore~~ 70–73

~~*labourers including cranemen/winchmen shall be for the account of the Charterers.* Cranemen / winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as Charterers' servants but shall always work under the supervision of the Master.~~ 74–75
*(c) Stevedore Damage* 76
~~The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledge of liability.~~ 77–82
~~The Charterers are obliged to repair any stevedore damage prior to completion of voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.~~ 83–88

**6.  Laytime** 89
\* *(a) Separate laytime for loading and discharging* 90
The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count. 91–93
The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count. 94–96
\* *(b) Total laytime for loading and discharging* 97
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count. 98–100
*(c) Commencement of laytime (loading and discharging)* 101
~~Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day, if notice given during office hours after 12.00 hours. Notice of readiness at loading port to be given to the Shippers named in Box 17 or if not named to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.~~ 102–108
~~If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.~~ 109–116
~~If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime~~ 117–118

Time **actually** used before commencement of laytime shall **not** count **both ends.** 119–120
*Indicated alternative (a) or (b) as agreed, in Box 16* 121

\*

**7.  Demurrage** 122
Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice. 123–127
In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the Vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby. 128–131

**8.  Lien Clause** 132
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, dead-freight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same. 133–136

**9.  Cancelling Clause** 137
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party. 138–140
(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delays stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to new cancelling date. 141–146

This document is a computer generated GENCON 1994 form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is copyright of Strategic Software Ltd. (SSL) Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document, and which is not clearly visible, then the original BIMCO approved shall apply. BIMCO and SSL assume no responsibly for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

**"Gencon" Charter** (As Revised 1922, 1976 and 1994)

Such option must be declared by the Charterers within ~~48~~ **36** 147
running hours after the receipt of the Owners' notice. If the 148
Charterers do not exercise their option of cancelling, then this 149
Charter Party shall be deemed to be amended such that the seventh 150
day after the new readiness date stated in the Owners' notification 151
to the Charterers shall be the new cancelling date. 152
The provisions of sub-clause (b) of this clause shall operate only 153
once, and in case of the Vessel's further delay, the Charterers shall
have the option of cancelling the Charter Party as per sub- clause
(a) of this Clause.

**10.   Bills of Lading** 154
Bills of Lading shall be presented and signed by the Master as per 155
the "Congenbill" Bill of Lading form, Edition 1994, without prejudice 156
to this Charter Party, or by the Owners' agents provided written 157
authority has been given by Owners to the agents, a copy of which 158
is to be furnished to the Charterers. The Charterers shall indemnify 159
the Owners against all consequences or liabilities that may arise 160
from the signing of Bills of Lading as presented to the extent that 161
the terms or contents of such Bills of Lading impose or result in the 162
imposition of more onerous liabilities upon the Owners than those 163
assumed by the Owners under this Charter Party.

**11.   Both-to-Blame Collision Clause** 164
If the Vessel comes into collision with another Vessel as a result of 165
the negligence of the other Vessel and any act, neglect or default of 166
the Master, Mariner, Pilot or the servants of the Owners in the 167
navigation or in the management of the Vessel, the Owners of the 168
cargo carried hereunder will indemnify the Owners against all loss 169
or liability to the other or non-carrying Vessel or her Owners in so 170
far as such loss or liability represents loss of or damage to, or any 171
claim whatsoever of the Owners of the said cargo, paid or payable 172
by the other or non-carrying Vessel or her Owners to the Owners of 173
said cargo and set-off, recouped or recovered by the other or non- 174
carrying Vessel or her Owners as part of their claim against the 175
carrying Vessel or the Owners. 176
The foregoing provisions shall also apply where the Owners, 177
Operators or those in charge of any Vessel or Vessels or objects
other than, or in addition to, the colliding Vessels or objects are at
fault in respect to a collision or contact."

**12.   General Average and New Jason Clause** 178
General Average shall be adjusted in London unless otherwise 179
agreed in Box 22, according to York-Antwerp Rules 1994 and any 180
subsequent modification thereof. Proprietors of cargo to pay the 181
cargo's share in the general expenses even if same have been 182
necessitated through neglect or default of the Owners' servants 183
(See Clause 2).
If General Average is to be adjusted in accordance with the law and 184
practice of the ~~United States of America~~ **English Law**, the following 185
Clause shall apply: "In the event of accident, danger, damage or 186
disaster before or after the commencement of the voyage, resulting 187
from any cause whatsoever, whether due to negligence or not for 188
which, or for the consequence of which, the Owners are not 189
responsible, by statute, contract or otherwise, the cargo shippers, 190
consignees or the Owners of the cargo shall contribute with the 191
Owners in General Average to the payment of any sacrifices, losses 192
or expenses of a General Average nature that may be made or 193
incurred and shall pay salvage and special charges incurred in 194
respect of the cargo. If a salving Vessel is owned or operated by the 195
Owners, salvage shall be paid for as fully as if the said salving 196
Vessel or Vessels belonged to strangers. Such deposit as the 197
Owners, or their agents, may deem sufficient to cover the estimated 198
contribution of the goods and any salvage and special charges
thereon shall, if required, be made by the cargo, shippers,
consignees or Owners of the goods to the  Owners before delivery.

**13.   Taxes and Dues Clause** 199
(a) ~~On Vessel~~  - The Owners shall pay all dues, changes and taxes 200
customarily levied on the Vessel, however the amount thereof may 201
be assessed.
(b) ~~On cargo~~  - The Charterers shall pay all dues, charges, duties 202
and taxes customarily levied on the cargo, however the amount 203
thereof may be assessed. 204
(c) ~~On freight~~  - Unless otherwise agreed in Box 23, taxes levied on 205
the freight shall be for ~~Owners'~~ Charterers' account. 206

**14.   Agency** (See Clause 43) 207
In every case the Owners shall **to** appoint **Charterers nominated** 208
**agents** their own Agent both at the port of loading and the port of 209
discharge.

**15.   Brokerage** 210
A brokerage commission at the rate stated in Box 24 on the freight, 211
dead-freight and demurrage earned is due to the party mentioned 212
in Box 24.
In case of non-execution 1/3 of the brokerage on the estimated 213
amount of freight to be paid by the party responsible for such non- 214
execution to the Brokers as indemnity for the latter's expenses and 215
work. In case of more voyages the amount of indemnity to be 216
agreed.

**16.   General Strike Clause** 217
(a) If there is a strike or lock-out affecting or preventing the actual 218
loading of the cargo, or any part of it, when the Vessel is ready to 219
proceed from her last port or at any time during the voyage to the 220
port or ports of loading or after her arrival there, the Master or the 221
Owners may ask the Charterers to declare, that they agree to 222
reckon the laydays as if there were no strike or lock-out. Unless the 223
Charterers have given such declaration in writing (by telegram, if 224
necessary) within 24 hours, the Owners shall have the option of 225
cancelling this Charter Party. If part cargo has already been loaded, 226
the Owners must proceed with same, (freight payable on loaded 227
quantity only) having liberty to complete with other cargo  on the
way for their own account.
(b) If there is a strike or lock-out affecting or preventing the actual 228
discharging of the cargo on or after the Vessel's arrival at or off port 229
of discharge and same has not been settled within 48 hours, the 230
Charterers shall have the option of keeping the Vessel waiting until 231
such strike or lock-out is at an end against paying half-demurrage 232
after expiration of the time provided for discharging until the strike 233
or lock-out terminates and thereafter full demurrage shall be 234
payable until the completion of  discharging, or if ordering the 235
Vessel to a safe port where she can safely discharge without risk of 236
being detained by strike or lock-out. Such orders to be  given within 237
48 hours after the Master or the Owners have given notice to the 238
Charterers of the strike or lock-out affecting the discharge. On 239
delivery of the cargo at such port, all conditions of this Charter Party 240
and of the Bill of Lading shall apply and the Vessel shall receive the 241
same freight as if she had discharged at the original port of 242
destination, except that if the distance to the substituted port 243
exceeds 100 nautical miles, the freight on the cargo delivered at the
substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the 244
Charterers nor the Owners shall be responsible for the 245
consequences of any strikes or lock-outs preventing or affecting the 246
actual loading or discharging of the cargo.

**17.   War Risk** ~~("Voywar 1993")~~ **See Voywar 2004 attached** 247
~~(1)        For the purpose of this Clause, the words:~~ 248
~~(a)          The "Owners" shall include the shipowners, bareboat~~ 249
~~Charterers, disponent Owners, managers or other operators who~~ 250
~~are charged with the management of the Vessel, and the Master;~~ 251
~~and~~
~~(b)          "War Risks" shall include any war (whether actual or~~ 252
~~threatened), act of war, civil war, hostilities, revolution, rebellion,~~ 253
~~civil commotion, warlike operations, the laying of mines (whether~~ 254
~~actual or reported), acts of piracy, acts of terrorists, acts of hostility~~ 255
~~or malicious damage, blockades (whether imposed against all~~ 256
~~Vessels or imposed selectively against Vessels of certain flags or~~ 257
~~Ownership, or against certain cargoes or crews or otherwise~~ 258
~~howsoever), by any person, body, terrorist or political group, or the~~ 259
~~Government of any state whatsoever, which, in the reasonable~~ 260
~~judgment of the Master and/or the Owners, may be dangerous or~~ 261
~~are likely to be or to become dangerous to the Vessel, her cargo,~~ 262
~~crew or other persons on board the Vessel.~~
~~(2)          If at any time before the Vessel commences loading, it~~ 263
~~appears that, in the reasonable judgment of the Master and/or the~~ 264
~~Owners, performance of the Contract of Carnage, or any part of it,~~ 265
~~may expose, or is likely to expose, the Vessel, her cargo,  crew or~~ 266
~~other persons on board the Vessel to War Risks, the Owners may~~ 267
~~give notice to the Charterers cancelling this Contract of Carriage, or~~ 268
~~may refuse to perform such part of it as may expose, or may be~~ 269
~~likely to expose, the Vessel, her cargo, crew or other persons on~~ 270
~~board the Vessel to War Risks; provided always that if this Contract~~ 271
~~of Carriage provides that loading  or discharging is to take place~~ 272
~~within a range of ports, and at the port or ports nominated by the~~ 273
~~Charterers the Vessel, her cargo, crew or other persons onboard~~ 274
~~the Vessel may be exposed, or may be likely to be exposed to War~~ 275
~~Risks, the Owners shall first require the Charterers to nominate any~~ 276
~~other safe port which lies within  the range for loading or~~ 277
~~discharging, and may only cancel this Contract of Carriage if the~~ 278
~~Charterers shall not have nominated such safe port or ports within~~
~~48 hours of receipt of notice of such requirement.~~

~~(3)          The Owners shall not be required to continue  to load~~ 279
~~cargo for any voyage, or to sign Bills of Lading for any port or place,~~ 280
~~or to proceed or continue on any voyage, or on any part thereof, or~~ 281
~~to proceed through any canal or waterway, or to proceed to or~~ 282
~~remain at any port or place whatsoever, where it appears, either~~ 283
~~after the loading of the cargo commences, or at any stage of the~~ 284
~~voyage thereafter before the discharge of the cargo is completed,~~ 285
~~that in the reasonable judgement of the  Master and/or the Owners,~~ 286
~~the Vessel, her cargo (or any part thereof), crew or other persons~~ 287
~~on board the Vessel (or any one or more of them) may be, or are~~ 288
~~likely to be, exposed to War Risks. If it should so appear, the~~ 289
~~Owners may by notice request the Charterers to nominate a safe~~ 290
~~port for the discharge of the cargo  or any part thereof, and if within~~ 291
~~48 hours of the receipt of such notice, the Charterers shall not have~~ 292
~~nominated such a port, then, the Owners may discharge the cargo at any~~ 293
~~safe port of their choice (including the port of loading) in complete~~ 294
~~fulfilment of the Contract~~ 295

This document is a computer generated GENCON 1994 form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is copyright of Strategic Software Ltd. (SSL) Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document, and which is not clearly visible, then the original BIMCO approved document shall apply. BIMCO and SSL assume no responsibly for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

**"Gencon" Charter** (As Revised 1922, 1976 and 1994)

of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceed 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having lien on the cargo for such expenses and freight. 296–301

(4)   If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route. 302–313

(5)   The Vessel shall have liberty: 314
(a)   to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions; 315–321
(b)   to comply with the order, directions or recommendation of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance; 322
(c)   to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement; 323–328
(d)   to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier; 329–330
(e)   to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions; 331–332
(f)   where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route. 333–336
337–340
(6)   If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of this Charter Party. 341–344

**18.   General Ice Clause** 345
*Port of loading* 346
(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear the Vessel frozen in is at liberty to leave without cargo, and this Charter shall be null and void. 347–351
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party. 352–360
(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port. 361–365
*Port of discharge* 366
(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage, or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. 367–371

Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination. 372–373
(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge. 374–376
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion. **No trading in ice, no forcing ice, not following ice breakers.** 377–381

**19.   Law and Arbitration** 382
*  (a) This Charter Party shall be governed by and construed in accordance with English Law and any dispute arising out of this Charter Party shall be referred to Arbitration in London in accordance with the Arbitration Act 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final. 383–395
For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25 ** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association. 396–397
(b)  This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc. 398–407
For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25 ** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of maritime Arbitrators, Inc. 408–410
*  (c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party. 411–413
* (d) If Box 25 in Part I is not filled in, sub clause (a) of this clause shall apply. 414
*  (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25. 415
**  Where not figure is supplied in Box 25 in Part I, this provision only shall be void but the other provisions of this Clause shall have full force and remain in effect. 416–417

This document is a computer generated GENCON 1994 form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is copyright of Strategic Software Ltd. (SSL) Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document, and which is not clearly visible, then the original BIMCO approved shall apply.
BIMCO and SSL assume no responsibly for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

**Clause 27**

Vessel:

MV DDSL "TBN"

Vessel to be maximum 20 years old.

Vessels shall be self-trimming, gearless, fully suitable for grab discharge single-deck bulk carriers,

Charterers shall have the free use of Vessel's gears and grabs if on board.

Owners guarantee that the nominated vessel(s) will comply with loading / discharging restrictions and regulations at the time of calling.

Vessel to be suitable in construction and cleared for the carriage of Coal in bulk.

All vessels nominated by owners for use under this contract shall be vessels owned / Managed / Charterers or controlled by owners and will comply in all respects with the requirements of the charter party.

The nominated vessel shall be in all respects in conformity under applicable conventions, laws and regulations including but not limited to the requirements and regulations of the relevant Port Authority of the International Safety Management Code ("ISM Code") and have on board a valid ISM Code Safety Management Certificate for the Vessel and a copy of the Vessel Manager's Document of Compliance as required by the ISM Code and SOLAS.

viii. Port State Control: Records of deficiencies and detentions detected, and corresponding corrections, will be evaluated. Vessel detained two times or more over the last three years or black-listed by the European Union will be rejected. Vessels detained in the last PSC inspection or with serious deficiencies in all PSC inspections of last year will be not be Acceptable.

ix. Protection and Indemnity clubs (P&I). Owners guarantee that Owners and/or Operators shall maintain full entry of the chartered vessel in a P&I Club member of the International Group of P&I Clubs. A copy of P & I Certificate of entry of ships not insured with a member of the International Group of P&I Clubs will be reviewed by the Repsol Insurance Department on a case by case basis.

Owners guarantee that throughout the term of this charter:

-        Nominated vessels are suitable for the loading and discharging at ports/berths/ anchorages in all respects and fully complies with regulations in force.
-        Neither owners, disponent owners, TC owners, vessel managers or the nominated vessel is / are barred by a United Nations embargo during. Charterers are entitled to be communicated all supporting documents in respect with the above matters.
-        Nominated vessel shall be in all respects eligible under applicable conventions, laws and regulations. For inspection by the appropriate authorities all certificates, records, compliance letters and other documents required for such services including but not limited to certificates of financial responsibility for pollution shall be available onboard.
-        Nominated Vessels' classification society are members of the International Association of Classification Society and will remain so throughout the duration of the charter party.
-        Nominated vessels shall be classed Lloyds 100A1 or equivalent
-        Nominated vessels shall be fully insured for Hull and Machinery against total loss

RIDER TO DDSL "TBN"/ Bluestone                              Charter Party November 4, 2020

**Clause 27 Continued:**

-            Nominated vessels shall be fully ITF or equivalent bona fide acceptable to ITF

SMC/DOC/ISSC/ H+M/ Class / P&I certificates shall be sent by owners to charterers together with the nomination of the vessel. All certificates and documents to be provided in English and validity of all certificates to be in force during the entire duration of the voyage as from date of nomination. Charterers questionnaire to be duly fulfilled and to be sent with and to be part of the nomination.

To the best of Owners' knowledge, nominated vessel is not subject to any boycott at any time during the performance of the voyage. Owners will advise company named in the chain of nominated vessel, if any, and acceptance of the chain will be at Charterers discretion, which not to be unreasonable.

Owners guarantee that the nominated vessel(s) will comply with loading / discharging restrictions and regulations at the time of calling. Regulations to be incorporated into the Charter party and terms to apply (see attached regulation)

Owners to satisfy themselves about port restrictions al load in discharge.

**Clause 28**

Cargo

70,000 Metric Tons, 10% more or less in Owners' option of lawful non-dangerous Coal in bulk, to be loaded/stowed carried in accordance with IMO/IMSBC code.

If we discharge in Swinoujscie max 70,000 Metric Tons less 10% in Owners option of lawful non-dangerous Coal to be loaded/stowed carried in accordance with IMO/IMSBC Code.

**Clause 29**

Loading Laycan: 00:01 hours LT 5th December, 2020 – 23:59 hours LT 15th December, 2020.

Notices for loading: upon vessel's nomination and thereafter 3, 2, 1 days. Latest with 48 hours notice, Master to advise loading plan which to include minimum rotation movements and holds to be loaded. Notices for discharging: upon vessel's sailing from load port and thereafter daily and 12, 6 hours.

**Clause 30**

Nomination of Vessel

Owners shall nominate a performer vessel provided that she fully complies with the terms and condition of the relevant Charter Party for present Charter Party at least 7 days prior to vessel eta load port together with all necessary certificates/documents, eta load port, estimated intake.  (Charterers will ask terminal if can nominate 6 days prior)  All vessels nominations to be subject to charterer/vetting approval within one working day form receipt of a valid nomination including vetting questionnaire and submission of all relevant documents/certificates.

**Clause 30 Continued:**

Owners are to nominate the Vessel, giving the main particulars of:

a) Flag
b) Year Built
c) Deadweight
d) Draft
e) Number of holds and hatches
f) Grain capacity and cubic in total and by holds
g) Type of hatch covers
h) Vessel's class
i) P and I Club
j) SMC / DOC / ISSC / H+M / Class / P+I and ITF or equivalent/ MLC certificates
k) Present position, itinerary, eta at load port and expected cargo intake
l) Charterers questionnaire
m) Advise companies named in the chain of nominated vessel, if any, and acceptance of the chain will be at charterers reasonable discretion.

Owners shall use their best efforts to arrive within the laycan and undertake to notify as soon as possible Charterers of any delay experienced by the vessel, where the vessel's NOR may be tendered beyond the last day of the cancelling, giving reasons for the delay. Upon receipt of Owners' notice, Charterers' shall have the option to terminate the Charter Party within 48 hours after receipt of Owners' notice, but never later than upon vessels arrival pilot station at load port. In case Charterers decide not to terminate the Charter Party, vessel will be loaded on a best effort basis and laytime to start counting once loading begin.

**Clause 31**

1 Safe Berth Norfolk intention Pier VI

Vessel to be loaded at the rate of 20,000 Metric Tons per weather working day of 24 consecutive hours, Saturdays, Sundays and holidays included, Charterers option to load at 25,000 Metric Tons per weather working day of 24 consecutive hours, Saturdays, Sundays and holidays included, excluding super holidays as per BIMCO holiday calendar.

Notice of readiness may be tendered any time Sundays and holidays included. Laytime shall commence 12 hours after the vessel tenders notice and is in all respects ready to discharge unless sooner commenced, in which case actual time used to count. Notice of readiness may be tendered whether in port or not, whether in berth or not, whether in free pratique or not, whether custom cleared or not.

If the berth is not available on the Vessel's arrival, the Master may tender said notice from a lay berth or anchorage within the port limits. Once berth is free, time used from shifting from anchorage to berth not to count even if vessel on demurrage.

At load port in case hold fails inspection time from failure until hold pass not to count as laytime or as demurrage if it is already on demurrage.

Owners shall satisfy themselves with loading port / terminal / anchorage restrictions without guarantee from Charterers; information provided by Charterers, if any, shall be for guidance only and without guarantee from Charterers. Restrictions, if any, shall be under Owners' full responsibility and all risk, expenses and time lost due to non-compliance with such restrictions shall be borne by Owner. Owners shall guarantee that they are conversant with and that they will follow the Loading Port and terminal or anchorage (as appropriate) rules and regulations.

3

**Clause 31 Continued:**

Owner agree to carry a set of Bills of lading on board departing load port, if so requested by Charterers but same is always subject to headowners' approval.

**Clause 32**

Discharge Port / Terminal: 1 safe port, 1 safe anchorage or 1 safe berth, Gdansk, Poland at Port Polnocny Dry Bulk Terminal (Outer Harbour) or in Charterers option Swinoujscie.

In Gdansk vessel to discharge at the rate of 25,000 Metric Tons per weather working day of 24 consecutive hours, Sundays and holidays included, excluding holidays are per BIMCO calendar if used actual time used to count.

In Swinoujscie vessel to discharge at the rate of 19,000 Metric Tons per weather working day of 24 consecutive hours, Sundays and holidays included, excluding holidays are per BIMCO calendar if used actual time used to count.

Notice of readiness may be tendered any time Sundays and holiday included. Laytime shall commence 12 hours after the vessel tenders notice and is in all respects ready to discharge unless sooner commenced, in which case actual time used to count. Notice of readiness may be tendered whether in port or not, whether in berth or not, whether in free pratique or not, whether custom cleared or not.

Should the circumstance arise that Charterers require the vessel to discharge at alternative or additional ports within Skaw / Passero, Mediterranean Sea, Black Sea, the Owners to agree same with compensation to be mutually agreed on an open book basis, but always sun to head owner approval of alternative destination.

Charterers to declare final discharge port destination latest 2 days before vessel's arrival load port.

In case berth is occupied upon vessel arrival and/or berthing is delayed for a reason other than vessel own fault, the master has the right to tender whether in berth or not, whether in port or not, whether customs cleared or not, whether in free pratique or not.

Notice of Readiness not to be tender prior commencement of laydays.

Owners shall satisfy themselves with loading port / terminal / anchorage restrictions without guarantee from Charterers; information provided by Charterers, if any, shall be for guidance only and without guarantee from Charterers. Restrictions, if any, shall be under Owners' full responsibility and all risk, expenses and time lost due to non-compliance with such restrictions shall be borne by Owner. Owners shall guarantee that they are conversant with and that they will follow the Loading Port and terminal or anchorage (as appropriate) rules and regulations.

**Clause 33**

Turn time: 12 hours turn time both at load and discharge port, unless sooner commenced.

**Clause 34**

Laytime: Laytime to be non-reversible.

**Clause 35**

Freight Rates:
Basis 20,000 Sundays and Holidays included load in Norfolk:
USD 10.00 Discharge in Gdansk with minimum 15.00 meter FW draft
USD 11.00 Discharge in Swinoujscie with minimum13.20 meter FW draft

Basis 25,000 Sundays and Holidays included in Norfolk:
USD 9.90 Discharge in Gdansk with minimum 15.00 meter FW draft
USD 10.90 Discharge in Swinoujscie with minimum 13.20 meter FW draft

Freight Payment: 100% of freight less 1.25% commission is payable to the owner/vessel via MID-Ship on Bill of Lading quantity within 3 banking days after receipt of owners freight invoice and release of signed clean Bills of Lading marked "Freight Payable as per governing Charter Party".

The demurrage / dispatch if any is payable within 30 days of discharge provided copies of SOF/NOR/laytime calculations and Owners final freight invoice are received by Charterers.

**Clause 36**

Taxes & Dues:

Freight shall be inclusive of all Port Charges, Harbour dues, Taxes and Consulages on the Vessel.

Any taxes / dues / wharfage on cargo to be for Charterers account. Any taxes / dues/ wharfage on vessel and/or freight to be for Owners account.

**Clause 37**

Shifting and warping: Costs for warping alongside the berth shall be for owners' account and time shall not count, against laytime or time on demurrage. Costs for shifting between berths, if any, shall be for Charterers' account and time shall count against laytime or time on demurrage, unless more than one berth was agreed and where in such a case costs shall be for Owners' account for the 1st shifting only, and time shall not count against laytime or time on demurrage. Time shall not count towards Laytime or time on Demurrage when the vessel is shifting from anchorage from anchor aweigh or Pilot on Board, whichever is the earlier, or waiting for first available tide, pilot or tugs until the Vessel is all fast alongside and ready in all respect to load or discharge (as applicable) at the berth specified by Charterers, even if lightening occurred at such waiting area.

**Clause 38**

In case original bills of lading is not ready upon vessel arrival a discharge port, Owners to allow to discharge and release the cargo against an LOI in head Owners P and I Club wording.

**Clause 39**

Stevedores to be appointed by Shippers or Receivers or their agents free of cost to the Vessel. The Stevedores although appointed by the Charterers to be under full supervision and control of the Master. The Stevedores shall be responsible for any damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Stevedores' damages are settled directly between Owners and Stevedores.

**Clause 39 Continued:**

Nevertheless, Charterers shall make their best efforts to mediate between Owners and Stevedores in order to get a constructive solution for all involved parties.

Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores but latest within 24 hours after occurrence. If occurrence happened during last 24 hours of port stay, written notification is to be given prior to Vessel sailing from port of occurrence. The Master shall endeavour to obtain the Stevedores' written acknowledge of liability.

**Clause 40**

Sanctions/Eligibility

Owner represents and warrants that Owner and its vessel are not in any way directly or indirectly owned, controlled by or related to any: (1) Cuban or Iranian interests; or (2) designated target of economic trade sanctions promulgated by the U.N., U.S., E.U., or Switzerland, ("Sanction Laws"). Owner undertakes that Owner and its agents and representatives will fully comply with all applicable Sanction Laws in their performance hereunder. If the goods are to be loaded or unloaded in the United States, then Owner represents and warrants that (i) the vessel has not called at a port in North Korea within 180 days of the vessel's estimated arrival at a U.S. port, (ii) the vessel has not engaged in any ship-to-ship transfer with a vessel that has called at a port in North Korea within 180 days of the vessel's estimated arrival at a U.S. port, and (iii) in the event the vessel has called at a Cuban port within 180 days of the vessel's estimated arrival at a U.S. port, all such calls were fully permissible under U.S. laws imposing sanctions on Cuba, and the vessel is not restricted in its ability to call at a U.S. port under these U.S. laws. Owner undertakes that Owner, its agents and representative will not cause Charterer to violate applicable Sanction Laws, in their performance hereunder. Owner agrees to cooperate with Charterer's reasonable requests for information or documentation to verify compliance with this clause.

Charterer represents and warrants that neither it nor any person or entity that owns or controls it is a designated target of economic trade sanctions promulgated by the U.N., U.S., E.U., or Switzerland ("Sanction Laws"). Charterer undertakes that Charterer and its agents and representatives will fully comply with all applicable Sanction Laws in their performance hereunder. Charterer undertakes that Charterer, its agents and representatives will not cause Owner to violate applicable Sanction Laws, in their performance hereunder. Charterer agrees to cooperate with Owner's reasonable requests for information or documentation to verify compliance with this clause."

**Clause 41**

Fixture to remain strictly private and confidential.

**Clause 42**

Agents: Charterers agents at both ends, Owners to be customary fees.

**Clause 43**

Jurisdiction: London Maritime Arbitrators Association (LMAA) English law to apply.

**Clause 44**

FORCE MAJEURE CLAUSE (load/discharge port)

1. Neither Owners nor Charterers shall be responsible for any failure to fulfil their respective obligations under this charter party if fulfilment has been prevented, delayed, hindered or curtailed by the occurrence of a force majeure event as defined in this clause (a "Force Majeure Event").

   1.2 For the purposes of this charter party, a Force Majeure Event shall constitute any circumstances whatsoever which are beyond the control of the Party claiming force majeure (the "Claiming Party") which it could not reasonably have avoided or overcome and which prevents, hinders or delays the Claiming Party to perform any of its obligations, and includes (without limitation) the following: any act of God or the elements, earthquakes, floods, landslides, civil disturbances, sabotage, acts of public enemies, war, blockades, insurrections, riots, epidemics, the act of any government or other authority or statutory undertaking, strikes, lockouts or other labour disruptions, accidents or breakdowns (howsoever caused) to the railways at the loading or discharging port, charterer's supplier's failure to supply or deliver the relevant cargo to charterers at the Loading Port howsoever this is caused

   1.3 The provisions of this clause shall not apply unless the Claiming Party notifies the other party that a force majeure event will affect the Claiming Party's obligations, as soon as practical but at the latest either:

   1.3.1 (i) within five (5) Working Days of the commencement of the event; or

   1.3.2 (ii) within five (5) Working Days from the Claiming Party's reasonable knowledge of the existence of such event (whichever is later); or

   1.3.3 (iii) within five (5) working days from the Claiming Party's reasonable knowledge that such event, if it had commenced before charterers declaration of the voyage (but such force majeure event was reasonably expected to not affect the claiming party's obligations) whichever of the three options is later.

   1.4 The Claiming Party must notify the other Party of its intention to claim Force Majeure, the nature of the Force Majeure Event and, if possible, the estimated duration of such Force Majeure Event (the "Force Majeure Notice").
   Failure to give such notice within the relevant five (5) Working Day period shall constitute a waiver of any right to rely on such Force Majeure Event. If part of or all of the cargo has been loaded before or at the time the Force Majeure Notice is given:

   1.5 At the loading port, in the event that a force majeure event occurs after any cargo has been loaded, and continues for 7 calendar days after the date of the Claiming Party's force majeure notice, Owners have the option of:

   15.1 sailing with whatever cargo is onboard and owners will be paid freight at the charter party rate for the quantity loaded onboard only; or

   1.5.2 remaining at the loading port until loading has recommenced. If Owners elect to remain at the Loading Port, then laytime or time on demurrage shall be suspended until the recommencement of loading.
   If no cargo has been loaded before or at the time the Force Majeure Notice is given:

**Clause 44 Continued:**

1.6 At the loading port, if Charterers give a Force Majeure Notice (provided no cargo has been loaded), Charterers ("Cancellation Notice") that Charterers wish to cancel the relevant voyage.

1.7 Upon receipt of the Cancellation Notice, Owners may:

1.7.1 elect to accept the cancellation; or

1.7.2 remain at the Loading Port until the termination of the Force Majeure event and its consequences. Once the Force Majeure event and/or consequences of the Force Majeure event have ceased, Charterers shall then be obliged to commence the loading as soon as practical.

1.8 All obligations (including the running of laytime and/or demurrage) under this charter party shall be suspended until the expiry of the force majeure event and/or the consequences of the force majeure event, whichever is the later.

1.9 Notwithstanding the above, if any obligation under this charter party is delayed, prevented or hindered for more than thirty (30) calendar days from the date of the Force Majeure Notice, then either Party may elect to be excused from performing the charter party (with respect to the affected cargo only) upon giving a five (5) Working Day written notice to the other Party. Such notice shall be given no later than five (5) Working Day of the expiry of the aforementioned thirty (30) calendar day period. Upon the date of such notice, the performance of the charter party for the affected cargo shall be cancelled and there shall be no claim by either party to the other, save for any claim arising out of any payment obligations that may have accrued before the occurrence of the force majeure event.

1.10 Where Owners have elected to sail in accordance or where the voyage was cancelled, then the voyage shall be deemed to have been fully performed and the Parties agree that it shall be as if the relevant full quantity has been loaded and performed.

### WAR RISKS CLAUSE FOR VOYAGE CHARTERING, 2004
### (CODE NAME: VOYWAR 2004)

(a)     For the purpose of this Clause, the words:

(i)     "Owners" shall include the shipowners, bareboat Charterers, Disponent Owners, Managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii)    "War Risks" shall include any actual, threatened or reported:

War; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b)     If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(c)     The Owners shall not be required to continue to load cargo for any voyage, or to sign Bill(s) of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete

fulfillment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(d)     If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, of the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(e)     (i)      The Owners may effect War Risk insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(ii)     If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, or in order to fulfill the Owners' obligation under this Charter Party, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners within 14 days after receipt of the Owners' invoice. If the Vessel discharges all of her cargo within an area subject to additional premiums as herein set forth, the Charterer shall reimburse the Owners for the actual additional premiums paid which may accrue from completion of discharge until the Vessel leaves such area or areas referred to above. The Owners shall leave the area as soon as possible after completion of discharge.

(f)     The Vessel shall have liberty:-

(i)     to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(ii)     to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii)    to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv)  to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v)  to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(vi)  where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(g)  If in compliance with any of the provisions of sub-clauses (b) to (f) this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfillment of the Contract of Carriage.

**Subject:**      Re: MV ELENA VE / Bluestone - nomination

**From:**         "Alexander Nikolsky" <nikolsky@dhshipman.com>

**Sent:**         11/12/2020 17:34:40

**To:**           "Paolo Bolla" <pbolla@midship.com>;

**Attachments:** 01. Document of Compliance (exp. 13.04.2023) LIBERIA.pdf; 02. Safety Management Cert. (exp. 19.04.2021).pdf; 03. Int. Ship Security Cert. (exp. 19.04.2021).pdf; 04. P+I COVER Cert of Entry (until 20.02.2021).pdf; 05. H+M cert. (until 15.01.2021).pdf; 06. Ship's Registry Cert. PERMANENT.pdf; 07. Int. Tonnage Cert. (all pages).pdf; 08. Class Cert. (exp. 19.11.2025).pdf; 09. Int. Load Line Cert. (exp. 19.11.2025).pdf; 10. Ship Safety Construction Cert. (exp. 19.11.2025).pdf; 11. Ship Safety Equipment Cert. (exp. 19.11.2025).pdf; 12. Ship Safety Radio Cert. (exp. 19.11.2025).pdf; 13. Int. Oil Pollution Prevention Cert. (exp. 26.07.2022).pdf; 15. Maritime Labour Cert. (exp. 08.08.2023).pdf; 19. Civil Liability (20.02.2020-20.02.2021).pdf; 24. Sanitation Cert. (exp. 16 03 2021).pdf

Fm: DDSL chartering

Paolo / Alex

Re: MV ELENA VE / Bluestone

Charterers are pleased to nominate following performer as per cp dd 04.11.2020 for reconfirmation latest by 15:00 Greece time on 14 dec 2020:

NAME : ELENA VE (EX HULL No 1051)
TYPE : GEARLESS S/D S/T BULK CARRIER
SUMMER DWT/DRAFT : 75,329.38 MT ON ABT 14.173 M
BUILT : 2010, NOVEMBER
SHIPYARD : RONGSHENG, CHINA
FLAG : LIBERIA
ICE CLASS : ICE - 1B
$CO_2$ FITTED : YES
LOA/BEAM : 224.90 M / 32.25 M
GRT/NRT : 41,697 / 25,713
HO/HA : 7/7
H/COVERS : SIDE ROLLING OPENING TYPE
TPC : 67.85 MT
GRAIN CAPACITY : 92,016.90 CBM

HATCH SIZES
HOLD NO.1 : 16.15 M X 12.00 M
HOLDS NOS. 2-7 : 17.10 M X 15.03 M

AUSTRALIAN HOLD LADDER FITTED

LAYCAN NORFOLK 30 DEC / 06 JAN
DEMURRAGE USD 16,000 PDPR


a) Flag - LIBERIA
b) Year Built - 2010
c) Deadweight 75,329 MTS (SUMMER)
d) Draft 14.173 (SUMMER)
e) Number of holds and hatches 7/7
f) Grain capacity and cubic in total and by holds
BREAKDOWN PER HOLD (CBM)
HOLD NO. 1 : 11,564.20
HOLD NO. 2 : 13,536.60
HOLD NO. 3 : 13,531.70
HOLD NO. 4 : 13,538.80
HOLD NO. 5 : 13,542.00
HOLDNO. 6 : 13,530.50
HOLD NO. 7 : 12,773.10
------------------------------
TOTAL 92,016.90
g) Type of hatch covers - SIDE ROLLING
h) Vessel's class - DNV
i) P and I Club - WEST OF ENGLAND
j) Certificates attached
k) Present position, itinerary, eta at load port and expected cargo intake
PRESENTLY DISCHARGING CORN IN HAIFA
ETS 14-15 DEC AGW
ETA NORFOLK 1-2 JAN AGW WP UCE
ESTIMATED INTAKE - ABT 65,000 MTS BSS SWINOUJSCIE / ABT 72,000 MTS BSS GDANSK
ETA SWINOUJSCIE ARND 19 JAN BSS NO DELAYS AT NORFOLK
ETA GDANSK 20-21 JAN BSS NO DELAYS AT NORFOLK


m) Advise companies named in the chain of nominated vessel, if any, and acceptance of
the chain will be at charterers reasonable discretion.

Registered owner - Full style: ROSTRUM SHIPPING SA, PANAMA
53RD E STREET, URBANIZATION MARBELLA, MMG TOWER,
16TH FLOOR, PANAMA

Parent company/group to which the owner belongs - Full style: GOLDEN UNION SHIPPING
CO SA
32 DIONYSIOU SOLOMOU STREET,
14123 LYKOVRYSI, GREECE

Technical operator - Full style: GOLDEN UNION SHIPPING CO SA

32 DIONYSIOU SOLOMOU STREET,
14123 LYKOVRYSI, GREECE

Commercial operator - Full style: GOLDEN UNION SHIPPING CO SA
32 DIONYSIOU SOLOMOU STREET,
14123 LYKOVRYSI, GREECE

DISPONENT OWNERS - Dh-Dhekelia Shipmanagement Limited (DDSL)
Kalliopis, 7, Aglantzias, P.C. 2102, Nicosia, Cyprus

Best regards
Alexander Nikolsky

Dh-Dhekelia Shipmanagement Limited (DDSL)
Kalliopis, 7, Aglantzias, P.C. 2102, Nicosia, Cyprus

phn: +357 97 649 744
mob: +48 881 023 029